UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOCTOR'S ASSOCIATES, INC., | : | |
|     Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:18-CV-276 (JCH) |
| v. | : | |
| | : | |
| GIRUM ALEMAYEHU, | : | June 7, 2018 |
|     Defendant. | : | |

**RULING RE: PETITION TO COMPEL ARBITRATION (DOC. NO. 1)**

This case comes before the court pursuant to a Petition to Compel Arbitration filed by the plaintiff, Doctor's Associates, Inc. ("DAI"). See Petition to Compel Arbitration ("Petition") (Doc. No. 1). DAI is the franchisor of Subway sandwich shops in the United States. See id. at ¶ 2. The defendant, Girum Alemayehu ("Alemayehu"), submitted an application to become a Subway franchisee on or about February 15, 2017. See id. at ¶ 6. Pursuant to the Federal Arbitration Act ("FAA"), title 9 section 4 of the United States Code, DAI moves to compel arbitration of claims that Alemayehu has raised in United States District Court, District of Colorado, against DAI and a DAI Development Agent, John Marshall; a staff person of the Development Agent, Connie Gemignani; and John Marshall's corporate entity, Clear Stone Development, Inc (collectively "the DA"). See Exh. B, Petition ("Colorado Complaint") (Doc. No. 1-2). Alemayehu opposes DAI's Petition. See generally Memorandum in Opposition to Plaintiff's Petition to Compel Arbitration ("Opposition") (Doc. No. 18).

For the following reasons, DAI's Petition to Compel Arbitration (Doc. No. 1) is denied.

1

## I. FACTUAL BACKGROUND

The plaintiff, DAI, is the franchisor of Subway restaurants. Petition at ¶ 2. DAI is incorporated in Florida and has its principal place of business in Connecticut. Id. The defendant, Alemayehu is a resident and citizen of Colorado. Id. at ¶ 3. Alemayehu submitted a Subway franchise application on February 15, 2017. See generally Exh. A, Mot. to Compel ("Franchise Application"). The Franchise Application is two pages long, and contains the following provision for residents of the United States, Puerto Rico, Guam, and Canada:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for the grant of a SUBWAY franchise from Franchisor, pursuant to the laws of Connecticut, USA, and by binding arbitration only. I agree that the arbitration will be administered by either the American Arbitration Association or its successor ("AAA") or the American Dispute Resolution Center or its successor ("ADRC") at the discretion of the party first filing a demand for arbitration. I understand that AAA will administer the arbitration in accordance with its administrative rules (including, as applicable, the Commercial Rules of the AAA and the Expedited Procedures of such rules), and ADRC will administer the arbitration in accordance with its administrative rules (including, as applicable, the Rules of Commercial Arbitration or under the Rules for Expedited Commercial Arbitration). If both AAA and ADRC are no longer in business, then I understand that the parties will mutually agree upon an alternative administrative arbitration agency. If the parties cannot mutually agree, then the parties agree to take the matter to a court of competent jurisdiction to select the agency. I agree that arbitration will be held in Bridgeport, Connecticut, USA, conducted in English and decided by a single arbitrator.

Franchise Application at 3.

On or about January 26, 2018, Alemayehu filed a Complaint and Jury Demand in the United States District Court for the District of Colorado alleging that his franchise application was denied due to his race, and bringing claims of racial discrimination in the making of a contract pursuant to section 1981 of title 42 of the United States Code, tortious interference with a contract, extreme and outrageous conduct, fraud, violations of the Colorado consumer protection statute, breach of contract, and civil conspiracy. See generally Colorado Complaint.

## II. DISCUSSION

The FAA provides that a district court shall compel arbitration if a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" moves the court for an order compelling arbitration, so long as the court is satisfied, after hearing the parties, "that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. "A dispute is arbitrable only if the parties contractually bind themselves to arbitrate it." Telenor Mobile Comms. AS v. Storm LLC, 584 F.3d 396, 405–06 (2d Cir. 2009). Arbitrability disputes under the FAA are governed by a summary judgment standard. See Alvarez v. Coca-Cola Refreshments, USA, Inc., 914 F. Supp. 2d 256, 256 (E.D.N.Y. 2012). If there is a genuine dispute of material fact as to the existence or validity of an agreement to arbitrate or a breach of that agreement, the parties are entitled to a jury trial on the disputed facts. Telenor Mobile Comms. AS, 584 F.3d at 411; see Schnabel v. Trilegiant Corp., 697 F.3d 110, 118 (2d Cir. 2012) ("[A] trial is warranted only if there exists one or more genuine issues of material fact regarding whether the parties have entered into such an agreement.").

In determining whether parties have agreed to arbitrate, state law applies. See Trilegiant, 697 F.3d at 119; Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir. 1993). The Franchise Application includes a choice of law provision selecting Connecticut law. See Franchise Application at 2. However, because the dispute before the court is whether the Franchise Application is a binding contract, the choice of law provision in the Franchise Application "does not determine the law that the [c]ourt should apply to determine whether the arbitration clause was part of any agreement between the parties unless and until it is determined that the parties have agreed to and are bound by it." Trilegiant, 697 F.3d at 119; but see Motorola Credit Corp. v. Uzan, 388 F.3d 39, 50 (2d Cir. 2004), cert. denied sub nom., 544 U.S. 1044 (2005) ("[A] choice-of-law clause in a contract will apply to disputes about the existence or validity of that contract.").

Because this court has diversity jurisdiction over this case, Connecticut's choice of law rules apply. See Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001) ("A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law."). Connecticut has substantially adopted the Restatement (Second) of Conflict of Laws for its choice of law rules. See General Accident Ins. Co. v. Mortara, 314 Conn. 339, 346 (2014) (noting that section 188 of the Restatement (Second) governs contracts without choice of law provisions). Section 188(2) directs courts to consider several factors to determine the law that should be applied, including: (1) "the place of contracting;" (2) "the place of negotiation of the contract;" (3) "the place of performance;" (4) "the location of the subject matter of the contract;" and (5) "the domicil, residence, nationality, place of incorporation, and place

4

of business of the parties." Restatement (Second) of Conflict of Laws § 188(2). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. In addition, Section 188(3) states, "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Id. at § 188(3).

In this case, the Franchise Application was completed in Colorado for a franchise located in Colorado. Alemayehu is a citizen of Colorado, while DAI is incorporated in Florida and has its principal place of business in Connecticut. Considering the totality of the circumstances in this case, the court concludes that Colorado law should be applied to analyze whether the parties in this case entered into an agreement to arbitrate disputes arising out of Alemayehu's Franchise Application.[1]

Pursuant to Colorado contract law, "[t]he first step in establishing the existence of a contract is showing that it was properly formed." PayoutOne v. Coral Mortgage Bankers, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009). "Contract formation requires mutual assent to an exchange between competent parties—where an offer is made and accepted—regarding a subject matter which is certain, and for which there is legal consideration." Id.; see Indus. Prods. Int'l, Inc. v. Emo Trans, Inc., 962 P.2d 983, 988 (Colo. App. 1997). Colorado sets a low bar for consideration. See W. Fed. Sav. & Loan Ass'n v. Nat'l Homes Corp., 167 Colo. 93, 103 (1968) ("A benefit to the promisor or

---

[1] The court notes that application of Connecticut law to the Franchise Application would lead the court to the same outcome that Colorado law produces because, in relevant respects, Colorado contract law and Connecticut contract law are substantially the same. See, e.g., Summerhill, LLC v. City of Meriden, 162 Conn. App. 469, 475 (2016) ("It almost goes without saying that consideration is [t]hat which is bargained for by the promisor and given in exchange for the promise by the promisee . . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.") (quoting Harley v. Indian Spring Land Co., 123 Conn. App. 800, 818–19 (2010))).

detriment to the promisee can constitute consideration, however slight."). However, "[a] unilateral promise is not sufficient consideration for creating an enforceable contract. Instead there must be an exchange of one party's promise or performance for the other party's promise or performance." PayoutOne, 602 F. Supp. 2d at 1224.

In this case, the alleged contract, the Franchise Application, contains only unilateral promises made by the applicant, Alemayehu. For example, the Franchise Application states:

> I understand that the granting of a franchise is at the sole discretion of the Franchisor . . . .
>
> I understand that any information I receive from the Franchisor or from any employee, agent, or franchisee of the Franchisor or its affiliate is highly confidential . . . . , has been developed with a great deal of effort and expense to the Franchisor, and is being made available to me solely because of this application. . . .
>
> I authorize the Franchisor or its designee to procure an investigative consumer report, a general background search and an investigation in accordance with anti-terrorism legislation . . . . I hereby release any representative of the Franchisor or its affiliate, a credit bureau, security consumer or other service provided selected by the Franchisor, its affiliates, officers, agents, employees, and/or servants . . . from any liability arising from the preparation of these investigations.

Franchise Application at 3. The Franchise Application contains no promises on the part of DAI. The Franchise Application does not, for example, state that DAI will review the applications it receives or respond to applicants regarding their applications. The Franchise Application also does not contain any promises to send applicants additional information.

After an initial review of DAI's Petition and Alemayehu's Objection, it appeared to the court that consideration was lacking. However, because the parties had not fully

addressed the issue in their original submissions, the court ordered the parties to "submit evidence and/or argument to the court" on the issue of whether the alleged contract was supported by consideration.[2] See Order (Doc. No. 23).  In its Response to that Order, DAI asserts that DAI "(1) promised to evaluate Alemayehu's suitability to be a Subway franchisee, and (2) agreed to binding arbitration of any disputes arising from the application process."  DAI's Response to Order ("Pl.'s Response") at 4.  DAI also argues that the parties delegated the question of whether the arbitration provision was supported by consideration to the arbitrator.  Id. at 9–10.  The court addresses each argument in turn.

    A.    <u>Promise to Consider Applicant</u>

DAI asserts that it promised to consider Alemayehu's Franchise Application, and that this promise constitutes consideration.  In support of the proposition that consideration of an applicant constitutes sufficient consideration to establish a valid contract, DAI cites the court to a New Jersey Supreme Court case and district court cases from the Northern District of Illinois and the District of New Jersey that have found a promise to review an application to be sufficient consideration for agreements contained within the application.  See Pl.'s Response at 5–6; Chatman v. Pizza Hut, Inc., No. 12-CV-10209, 2013 WL 2285804, at *4 (N.D. Ill. May 23, 2013); Gavin v. AT & T Servs., Inc., No. Civ.A. 10-3140 MLC, 2012 WL 2116481, at *7 (D.N.J. June 11,

---

[2] The court notes that, in his Objection, Alemayehu appears to make the argument that the Franchise Application lacks consideration.  See Objection at 11 ("There are no return promises from DAI that appear in the Application—not even a promise that DAI will review the applicant's information."). However, Alemayehu characterizes the arbitration provision as "severable and enforceable."  Id. at 10. This characterization was, apparently, based on this court's 2016 opinion, Doctor's Assocs. Inc. v. Burr, 226 F. Supp. 3d 106, 108 (D. Conn. 2016), in which this court enforced an identical arbitration provision in a Subway franchise application.  As stated herein, see infra Section II(A), the court considers Burr distinguishable from this case and, to the extent it is indistinguishable, declines to follow Burr in this case.

7

2012); Sheller by Sheller v. Frank's Nursery & Crafts, Inc., 957 F. Supp. 150, 154 (N.D. Ill. 1997); Martindale v. Sandvik, Inc., 173 N.J. 76, 86–89 (2002). The court need not assess the merits of these cases, however, because they are inapposite. In this case, DAI did not make a legally enforceable promise to consider Alemayehu's Franchise Application. As noted above, there is no language in the Franchise Application binding DAI to consider franchise applications, to provide applicants with additional information, or to respond to everyone who applies. Indeed, DAI does not sign the application. Had Alemayehu's application simply languished, unread, in an electronic inbox, nothing in the Franchise Application gives Alemayehu the right to sue—or arbitrate—for breach of contract. Therefore, assuming, without deciding, that a promise to consider an application is sufficient consideration, that does not dictate the outcome in this case where no promise to review the Franchise Application was made.

In a Declaration submitted in support of DAI's Response to the court's Order regarding consideration, Senior Associate General Counsel for DAI, David Cousins, states as follows:

> In return for the provision of [information provided by applicants], DAI considers the information provided in the application and elsewhere and decides whether to grant the applicant the right to purchase a Subway franchise and sign a franchise agreement.

Declaration of David Cousins ("Cousins Decl.") (Doc. No. 29-1) at ¶ 12. Cousins does not, however, cite the court to any language in the Franchise Application or any other written or oral contract provisions containing a promise by DAI to review all applications that are filed. The court concludes that nothing in the Franchise Application actually binds DAI to consider all the applications that it receives. For example, if DAI decided it had enough franchises in Colorado, nothing in the Franchise Application precludes DAI

8

from unilaterally deciding not to review any applications submitted for Colorado-based franchises. Furthermore, neither DAI nor Alemayehu has suggested that the alleged contract between the parties consists of additional documents or oral communications. Cousins's statement that DAI <u>does</u> consider applications is not equivalent to a promise to Alemayehu that DAI <u>will</u> consider his Franchise Application. The possibility, or even likelihood, that DAI will consider Alemayehu's Franchise Application is not a promise and is not, therefore, sufficient consideration to find that the Franchise Application is a valid and enforceable contract. <u>W. Fed. Sav. & Loan Ass'n</u>, 167 Colo. at 103.

The court recognizes that its decision in <u>Doctor's Associates, Inc. v. Burr</u> is, at least arguably, inconsistent with this conclusion. 226 F. Supp. 3d 106 (D. Conn. 2016). In <u>Burr</u>, this court enforced an identical arbitration clause in a Subway franchise application against prospective franchisees. <u>Id.</u> In so doing, the court stated, "In exchange for the Burrs filling out the Applications, DAI agreed to provide the Burrs with information concerning a Subway franchise and to consider the Burrs as potential Subway franchisees." <u>Id.</u> at 108. The court's conclusion with respect to consideration was based on a declaration submitted in support of DAI's Petition to Compel Arbitration by Ralph Piselli, who was a Franchise Sales Manager for Subway restaurants. <u>See</u> <u>id.</u>; <u>see also</u> Declaration of Ralph Piselli (Doc. No. 2-7), <u>Doctor's Assocs., Inc. v. Burr</u>, 3:16-cv-1335 (JCH).

Here, DAI has submitted no evidence to support their position that the Franchise Application in some way binds them to consider applications or requires them to provide applicants with information about opening franchises. In addition, in <u>Burr</u>, the defendants did not dispute that a valid arbitration agreement was in place, but instead

9

attacked the scope of the agreement and its relevance to the claims they were trying to litigate.  See Answer (Doc. No. 13), Doctor's Assocs., Inc. v. Burr, 3:16-cv-1335 (JCH).  In other words, this case is distinguishable from Burr both as a matter of the record before the court and the arguments raised by the parties.  Furthermore, to the extent that the court's conclusion in this Ruling is inconsistent with Burr, the Burr Ruling is not binding on this court.  Therefore, Burr does not alter the court's conclusion that DAI did not promise to review or consider the Franchise Application submitted by Alemayehu and, therefore, while the Franchise Application may have been considered, that was not legally sufficient consideration.

  B. <u>Mutual Promise to Arbitrate</u>

DAI has characterized the arbitration clause as a mutual agreement to arbitrate.  See Petition at ¶ 7 ("The Franchise Application contains a dispute resolution clause requiring the parties to arbitrate 'any and all previously unasserted claims, disputes, or controversies arising out of or relating to my application or candidacy for the grant of a Subway franchise from [DAI].").

If the arbitration provision was a mutual agreement to arbitrate, that alone would be sufficient to constitute consideration.  See, e.g., Nowak v. Volt Mgmt. Corp., No. 09-CV-401-WYD-BNB, 2009 WL 1392084, at *3 (D. Colo. May 15, 2009) ("One party's agreement to arbitrate is adequate consideration for the other party's agreement to arbitrate."); Bassett v. Electronic Arts, Inc., 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) ("Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement.").  However, the arbitration provision at issue, like the rest of the Franchise Application, is not mutual: it is a unilateral promise to arbitrate by the applicant,

Alemayehu.  See Franchise Application at 3 ("I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for the grant of a SUBWAY franchise from Franchisor, pursuant to the laws of Connecticut, USA, and by binding arbitration only."); see also Nowak, 2009 WL 192084, at *3 ("[C]onsideration other than the promise to arbitrate is required where the arbitration agreement is not mutual.").  The only language that refers to DAI relates exclusively to the procedure for finding an arbitration agency if AAA and ADRC are no longer in business.  Id. ("If both AAA and ADRC are no longer in business, then I understand that the parties will mutually agree upon an alternative administrative arbitration agency.").  Nothing in the arbitration provision requires DAI to arbitrate.  Notably, DAI did not sign the Franchise Application.

DAI cites the court to a slew of cases in which a mutual agreement to arbitrate was sufficient consideration to make an arbitration clause binding and enforceable.  As acknowledged above, this court agrees.  However, unlike here, the agreements to arbitrate at issue in the cases cited by DAI were mutual.  See, e.g., Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753, 758 (2d Cir. 1967) ("Hellenic's promise to arbitrate was sufficient consideration to support Dreyfus's promise to arbitrate."); Bassett, 93 F. Supp. 3d at 105 ("In this case, the arbitration clause binds both parties, stating that 'either [party] may elect to have the Dispute finally and exclusively resolved by binding arbitration." (emphasis added)); Marciano v. DCH Auto Grp., 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) ("[T]he Arbitration Agreement provides that Plaintiff and DCH 'both agree that any claim, dispute, and/or controversy' within the scope of the agreement 'shall be submitted to a determined exclusively by binding arbitration,' and

11

that <u>both</u> Plaintiff and DCH agreed to 'give up [their] rights to trial by jury' . . . ." (emphasis added)); Topf v. Warnaco, Inc., 942 F. Supp. 762, 765 (D. Conn. 1996) ("[T]his Handbook is our entire agreement concerning <u>each party's</u> right to arbitrate employment disputes . . . ." (emphasis added)).  In short, the existence of a mutual agreement to arbitrate in the cases cited by DAI makes those cases materially distinguishable from this case.

    C.    <u>Whether the Question of Consideration Is a Question for the Arbitrator</u>

In its Response to the court's Order regarding consideration, DAI also argues that "[t]he Court does not need to decide whether the Franchise Application or the agreement to arbitrate is a contract or is supported by sufficient consideration because the parties have delegated these issues to the arbitrator."  Pl.'s Response at 9. However, this argument by DAI assumes that an enforceable agreement to arbitrate between the parties exists; the parties have only "delegated these issues to the arbitrator" if they agreed to arbitrate in the first place.  The Second Circuit has expressly rejected such an argument: "Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists <u>and is effective</u> is necessarily for the court and not the arbitrator."  Trilegiant, 697 F.3d at 118 (emphasis added).  In light of the court's conclusion above that there was no contractual agreement to arbitrate because the promises contained in the Franchise Application were entirely unilateral, the parties have not agreed to delegate any issues to the arbitrator because they have not agreed on anything.

Finally, DAI asserts that the delegation provision itself is mutual and, therefore, constitutes consideration for the arbitration provision and the contract as a whole.  <u>See</u>

12

Pl.'s Response at 10.  In light of the court's conclusion that, by the plain language of the Franchise Application, DAI has not promised to arbitrate any claims <u>it</u> may elect to bring arising out of the Franchise Application, it has also not agreed to delegate threshold questions of arbitrability to an arbitrator with respect to <u>its</u> claims.  That DAI is willing to delegate threshold questions of arbitrability of <u>Alemayehu's</u> claims is not consideration, since by doing so DAI is neither giving Alemayehu anything of value nor giving up anything of value to itself.  <u>See</u> <u>Hatlee v. Hardey</u>, No. 13-CV-2469-RM-MJW, 2015 WL 5719644, at *11 (D. Colo. Sept. 29, 2015) ("Consideration may take the form of 'some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.'" (quoting <u>Lucht's Concrete Pumping, Inc. v. Horner</u>, 255 P.3d 1058, 1061 (Colo. 2011) (en banc))).  It has not bound itself to so arbitrate.  Further, at the time the agreement was signed by Alemayehu, DAI did not sign it.

For the foregoing reasons, the court concludes that the Franchise Application was not supported by consideration and, therefore, the parties did not agree to arbitrate. Therefore, DAI's Petition to Compel Arbitration (Doc. No. 1) is denied.

        D.      <u>Additional Arguments Raised by Alemayehu</u>

In his Objection to DAI's Petition and in his Response to the court's Order regarding consideration, Alemayehu raised a number of arguments relating to the scope of the arbitration provision, the lack of consideration for the alleged contract as a whole, and DAI's alleged bad faith in contracting.  <u>See generally</u> Objection; Def.'s Response to Order (Doc. No. 30).  In light of the court's conclusion that the Franchise Application was not a binding contract and, therefore, that the parties did not agree to arbitrate, the

court concludes that it is neither necessary nor proper to reach Alemayehu's other arguments.

## III. CONCLUSION

For the reasons stated above, DAI's Petition to Compel Arbitration (Doc. No. 1) is **DENIED**. The Clerk is directed to close this case.

**SO ORDERED**.

Dated this 7th day of June 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge